UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| PATRICIA WHITMORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:06CV1486  CDP |
| | ) | |
| THE STANDARD INSURANCE | ) | |
| CO. and SUMMERS, COMPTON, | ) | |
| WELLS, AND HAMBURG, P.C. | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Patricia Whitmore alleges that the defendants denied her disability

benefits claim in violation of the Employment Retirement Income Security Act of

1974, 29 U.S.C. § 1101, et seq.  The parties have filed cross-motions for summary

judgment, and defendants have filed motions to strike certain evidence outside the

administrative record submitted by plaintiff.  I previously held that the arbitrary

and capricious or abuse of discretion standard applied in this case.  Therefore, I am

limited to reviewing only the administrative record that was before Standard

Insurance when it made its determination, so I will grant the motions to strike.  The

administrative record contains substantial evidence to support defendants' denial of

benefits, and there is ample evidence from which a reasonable decision-maker

could have determined that no benefits were due.  Defendants are therefore entitled

to judgment as a matter of law.

## Factual and Procedural Background

Whitmore was employed by defendant Summers, Compton, Wells, & Hamburg, P.C. (SCWH) as a legal secretary, and as such, she participated in SCWH's employee welfare benefit plan. This plan included long-term disability benefits in specified circumstances. She stopped working on November 5 or 6, 2004, and sought benefits under the long-term disability plan, alleging that she was disabled because of back problems and related pain. The policy provided benefits if a claimant's disability prevented her from performing her "own occupation."

Standard initially denied Whitmore's claim for Long Term Disability benefit on September 27, 2005. After considering her appeal, it reaffirmed the denial on April 26, 2006. On September 22, 2006, the Social Security Administration awarded her disability benefits, concluding that Whitmore had been disabled since November 5, 2004.

### The Medical Records

Whitmore dates the beginning of her back pain to 1998, when she received a lumbar epidural injection while in labor. She continued to work between 1998 and 2004 but had multiple MRIs, CT scans, myelograms, and EMGs. She had at least ten MRIs between 2000 and 2004, and at least ten different doctors were involved

in her treatment or diagnosis. These numerous examinations revealed that she had (1) mild or slight scoliosis; (2) mild degenerative disk disease at L3-4; (3) little or no foraminal narrowing; and (6) no disc herniation except possibly mild herniation at C5-6. None of the doctors found any stenosis. Further, none of the examining doctors stated that Whitmore was disabled before she stopped working. During this time period, Whitmore attempted to relieve her pain through therapy and medication.

Her most recent MRI before she quit work was done in October 2004, after she reported hearing her back "pop" when she picked up her son. Dr. Walter Holloman read this MRI as showing only very mild degenerative disk disease. In November Whitmore had Xrays, which showed localized scoliosis, normal sacral formina and normal disk interspace. Dr. Matthew Gornet performed a discogram in December, followed by a CT scan. Dr. Joshua Shimony read the CT scan as showing multi-level degenerative disease with anterior anular tear at L3-4 and right postero-lateral small disk herniation at L5-S1 with right neural foramina narrowing. The report stated that this narrowing at L5-S1 was "mild," and there was no other stenosis.

On January 26, 2005, Whitmore saw Dr. Joseph Hanaway. Dr. Hanaway is the first and only doctor who has opined that she was disabled, and although he had

been seeing her before this date, this was the first time he stated that opinion.  He

described her pain as constant, and said that she could not bend, lift, push, pull, or

carry.  Based on the reports of the December procedures, he described her scoliosis

as "major rotatory scoliosis" and "terrible congenital rotatory scoliosis."  He opined

that, "There is no way this patient can work under these circumstances.  She cannot

even get pain relief at home."  He further indicated that she had spinal stenosis as

well as "multiple disc herniation and protrusions from L3 to L5-S1 level."  He

prescribed medication and scheduled her to come back in two months.

Dr. Hanaway's records reflect that shortly before Whitmore came back to see

him in March of 2005, she was involved in two different automobile accidents.

She was driving on both occasions, according to Dr. Hanaway's records.  He

ordered  MRIs, which revealed mild desiccation of the L3-4 disk, but no stenosis.

Additional tests performed after that date continued to reflect "mild" disease

process.

<u>Standard's Review of the Claim</u>

In September 2005, as part of Standard's review of Whitmore's claim for

benefits, Dr. Hans Carlson, a physician board certified in physiatry, reviewed all of

Whitmore's medical records going back to 1995.  He did not examine Whitmore.

Dr. Carlson concluded that it would be reasonable for a person with Whitmore's

condition to be capable of performing sedentary work on a full-time basis. He found that Whitmore's limitations would prevent her from "consistent bending, twisting, stooping activities with respect to the lumbar spine, and consistent flexion, extension activities with respect to the cervical spine but [she] would be capable of performing these activities occasionally or frequently."

Following Dr. Carlson's report, Phil Hines, a vocational case manager, concluded that Whitmore could perform the occupation of legal secretary as defined by the United States Department of Labor within the limitations set out by Dr. Carlson. Hines based this conclusion upon the description of legal secretary in the Dictionary of Occupational Titles, rather than upon Whitmore's description of her specific job duties at SCWH.

As mentioned above, Standard denied the claim in September of 2005, concluding that although Whitmore had limitations on her ability to bend, twist, stoop, and to flex and extend her neck, she was capable of performing these activities occasionally and she was capable of performing the occupation of legal secretary. Whitmore appealed, Standard referred the appeal to its "Quality Assurance Unit" for an independent review.

As part of that review, Dr. Elias Dickerman, a board-certified neurologist, reviewed all of Whitmore's medical records. Dr. Dickerman did not examine

Whitmore, but based upon a review of her medical records, he concluded that she had no limitation from performing sedentary level work and would actually be able to perform some activities in the light capacity category. He particularly noted that she had chronic pain in her lower back, but that the radiological studies of the lumbar spine did not provide any explanation for this pain. In reaching his conclusion about her limitations, Dr. Dickerman discounted Dr. Hanaway's January 2005 findings because his descriptions were "not concordant to the records." In particular, Dr. Dickerman concluded that the MRIs did not support Dr. Hanaway's assessment that Whitmore had multiple disc herniations and protrusions, nor did the records support his statement that she had "terrible congentital scoliosis."

On April 21, 2006, Standard again denied the claim, citing the conclusions of Dr. Dickerman, as well as the other medical records. Standard stated that it saw no reason to seek an independent medical examination because of the "quantity and quality of diagnostic tests and physical examinations" contained in the file.

### Discussion

Summary judgment is appropriate only if there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In this case, Whitmore bears the burden of

establishing that defendants improperly denied her claim for disability benefits.

Under ERISA, a plan beneficiary has the right to judicial review of a benefits determination. See 29 U.S.C. § 1132(a)(1)(B). I have already determined that the plan provided Standard discretionary authority to determine Whitmore's eligibility for benefits, that the abuse of discretion or arbitrary and capricious standard would apply in this case, and that my review in this matter would be limited to the administrative record. Under this standard, I must affirm Standard's decision if a "reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision." Ferrari v. Teachers Ins. & Annuity Ass'n, 278 F.3d 801, 807 (8th Cir. 2002) (emphasis in original). Even if a different, reasonable interpretation could have been made, I should not disturb Standard's decision if substantial evidence supports that decision. McGee v. Reliance Standard Life Ins. Co., 360 F.3d 921, 924 (8th 2004).

Whitmore raises several arguments for why I should grant her motion for summary judgment and deny defendants' motion. Several of these arguments indicate a fundamental misinterpretation of the law or of the ERISA plan.

Whitmore argues she only needed to establish that she was disabled during the 180 period after her last day of employment in order to be eligible for benefits, because the policy requires that Whitmore be disabled continuously for 180 days

before receiving any benefits. Under this argument, even if she had not been disabled when she quit work and sought benefits, she could still obtain benefits if she had become disabled from her car wrecks four or five months later. This argument is without merit for several reasons. The policy only applies to active employees. Therefore, if Whitmore became disabled two days (or four months) after she ended her employment with SCWH, she would not be covered by the plan. Similar situations have been recognized by other courts. See Graham v. First Reliance Standard Life Ins. Co., 2007 WL 2192399, at *1 (S.D.N.Y. 2007) (noting that even though there was a 180 day elimination period where the plaintiff must be unable to perform the material duties of his occupation before he was eligible for benefits, the plaintiff had to present evidence that he was disabled on the day he ended his employment); see also Providence v. Hartford Life and Acc. Ins. Co., 357 F. Supp. 2d 1341, 1345 (M.D. Fla. 2005) (holding that "the operative inquiry is whether Plaintiff was disabled within the meaning of the Plan's language as of the date of her resignation" even though that plan also contained a similar elimination period). The operative inquiry here is whether Whitmore was unable to perform with reasonable continuity the material duties of her own occupation on November 5, 2004, her last date of employment with SCWH. This is not to say that medical records taken after this date are not relevant to this inquiry, but those documents

must establish disability as of that date.

Whitmore also argues that a 1997 amendment to the plan that changed the word "sickness" to "physical disease" means that all she needed to establish in order to be eligible for benefits was that she suffered some physical disease. Her brief says: "Thus, to be considered disabled within the new meaning of the policy, Whitemore [*sic*] need only show either that she has a condition that manifests itself as a structural change in her body, or a functional change in her body as diagnosed by a single physician." [Docket # 31, page 3]. This argument completely ignores the requirement that she be *disabled* – not just sick – in order to obtain *disability* benefits. While there is no question that Whitmore suffers from a number of physical conditions that would qualify as a "physical disease," she needs to establish not only a physical disease but also that the disease rendered her unable to perform with reasonable continuity the material duties of her occupation.

Next, Whitmore argues that the Social Security Administration's award of disability benefits and Standard's failure to take that award into account demonstrate that Standard's decision lacks substantial evidence. As I noted in my earlier ruling determining what standard to apply, it is entirely possible for different fact finders to view identical evidence in different ways and for both decisions to be supported by the evidence. A later determination of disability by the Social

Security Administration does not mean that the plan administrator acted improperly.  See Chandler v. Underwriters Lab., Inc., 850 F. Supp. 728, 737 (N.D. Ill. 1994).

Regardless, I may not take the Social Security Administration's decision into account now because it is outside the administrative record that was before Standard when it made its benefits determination.  The Eighth Circuit has stated that, under the arbitrary and capricious standard of review, it is improper for a court to consider such a determination where the Social Security benefits letter was not before the administrator at the time of the benefits determination.  Barnhart v. UNUM Life Ins. Co. of America, 179 F.3d 583, 590 (8th Cir. 1999).

Whitmore also argues that the Social Security Administration determination was improperly excluded from the administrative record and that Standard should have extended the investigation period and requested those documents.  In making this argument, Whitmore relies on Harden v. American Express Fin. Corp., 384 F.3d 498, 499 (8th Cir. 2004).  In that case, the Eighth Circuit held that a less deferential standard would apply where the plan administrator failed to obtain Social Security records when the administrator had led the participant to believe that it was considering such records.  The participant believed that the administrator was considering the Social Security determination because it had

required him to apply for Social Security benefits, he had submitted a specific authorization for release of his Social Security medical documents, the administrator told him it had reviewed all available documentation, and the administrator had acknowledged the Social Security award in its letter denying his appeal.  Id. at 499-500.

This case can easily be distinguished from the decision in Harden.  First, the Social Security determination was made almost a year after Standard's initial denial of Whitmore's claim and several months after its denial of her appeal.  Whitmore cannot point to any precedent that would indicate that Standard had a duty to delay ruling on her claim until after the Social Security determination.  Standard did not bear the same duty to develop the record that a Social Security administrative law judge would have.  See Braile v. Fort Dearborn Life Ins. Co., 2005 WL 2563185, at *4 (W.D. Mo. Oct. 11, 2005); see also Harden, 384 F.3d at 500 ("[W]e do not hold that a plan administrator has the same independent duty to develop the record that a Social Security administrative law judge does.").  Additionally, there is no evidence that she or her lawyers requested that the decision be delayed for this reason.  As a result, I can see nothing improper in Standard's failure to delay its determination to wait for the Social Security determination.  Further, another of Whitmore's contentions is that Standard delayed too long in making its final

determination on her appeal. While this contention is not directly in contrast with her contention that Standard should have waited to make its initial determination, it does detract from that argument.

The real heart of Whitmore's argument is that Standard improperly discounted or ignored Dr. Hanaway's January 2005 opinion regarding her disability and limitations. Whitmore correctly notes that Dr. Carlson's analysis of her abilities did not identically mirror Dr. Hanaway's opinion. Still, the reports of Drs. Carlson and Dickerman indicate that they took the full medical record into account in forming their opinions. Both reports indicate that the doctors considered the statement of Dr. Hanaway. Although a treating physician's opinion is usually accorded more deference than a reviewing physician's opinion under ERISA, a treating physician's opinion does "not automatically control, since the record must be evaluated as a whole." Smith v. Unum Life Ins. Co. of America, 305 F.3d 789, 795 (8th Cir. 2002) (quoting Fletcher-Merrit v. NorAm Energy Corp., 250 F.3d 1174, 1180 n. 3 (8th Cir. 2001)).

The medical record as a whole supports Dr. Carlson's and Dr. Dickerman's conclusions. Dr. Hanaway was the only physician to opine that Whitmore was disabled because of her back condition, and a number of Dr. Hanaway's findings are inconsistent with the findings of other treating physicians. No other doctor

found any evidence of stenosis, and while other doctors found mild scoliosis, Dr.

Hanaway characterized Whitmore's scoliosis as "terrible congenital rotary

scoliosis." In fact, even doctors who examined Whitmore after her automobile

accidents following Dr. Hanaway's January 2005 report did not find evidence of

terrible scoliosis or stenosis. These serious differences between the findings of

other treating physicians and Dr. Hanaway indicate that Standard could properly

discount his opinion. As a result, the limitations posed in Standard's question to

Phil Hines regarding Whitmore's ability to perform her own occupation were

proper.

Whitmore further argues that Standard improperly defined her occupation

according to the Dictionary of Occupational titles instead of considering the job

requirements of her actual position. According to the plan, Standard had discretion

to interpret the policy, and under the abuse of discretion standard, I should not

disturb Standard's interpretation of a term if the interpretation is reasonable. Seitz

v. Metro. Life Ins. Co., 433 F.3d 647, 650 (8th Cir. 2006). Although this issue has

not been raised before the Eighth Circuit, the Sixth Circuit has held that using the

Dictionary to determine the definition of an employee's "own occupation" is

reasonable. See Osborne v. Hartford Life and Accident Ins. Co., 465 F.3d 296, 299

(6th Cir. 2006) ("The word 'occupation' is sufficiently general and flexible to

justify determining a particular employee's 'occupation' in light of the position descriptions in the Dictionary rather than examining in detail the specific duties the employee performed."); but see Bishop v. Long Term Disability Income Plan of SAP America, 2007 WL 1314523, at *2 (10th Cir. May 7, 2007) (holding that a plaintiff's "own occupation" referred to his ability to perform his own job, not the job description in the Dictionary of Occupational Titles). Because I agree with the Sixth Circuit that this interpretation of "own occupation" is reasonable, I cannot impose some other interpretation on Standard now. Therefore, Standard did not improperly utilized the Dictionary of Occupational Titles in determining whether Whitmore was disabled from her own occupation.

Whitmore further argues that Hines failed to take her limitations into account in determining that she could perform the occupation of a legal secretary. There is no dispute that Whitmore has many physical limitations, but as I noted above, Standard's failure to apply the limitations stated by Dr. Hanaway does not amount to an unreasonable error. Both Drs. Carlson and Dickerman determined that Whitmore could perform sedentary work. Hines indicated that Whitmore could perform the work of a legal secretary as defined by the Dictionary. Whitmore does not raise any challenge that relates to how any of these limitations would interfere with the job description in the Dictionary, but instead her argument relies upon the

limitations imposed by Dr. Hanaway.

Finally, Whitmore points to two asserted procedural irregularities. First, Whitmore argues that SCWH was actually the plan administrator, not Standard. This argument is based upon the Summary Plan Description for the SCWH 401(k) plan rather than upon the documents involved in the disability plan. SCWH may well be the plan administrator for the 401(k) plan, but that has no bearing on who the plan administrator was for the disability plan. In fact, as I noted in my earlier opinion, Standard reserved all authority to "control and manage the Group Policy, to administer claims, and to interpret the Group Policy and resolve all questions arising in the administration, interpretation, and application of the Group Policy." Standard is the plan administrator.

Whitmore's second procedural argument – that the appeals decision was untimely – also fails. Under the appropriate federal regulation, the plan administrator must notify the claimant of its adverse determination within 45 days or before the expiration of that initial 45 day period, it must notify the claimant of the circumstances requiring an extension and it may then have another 30 days to complete the review. 29 C.F.R. § 2560.503-1(f)(3). Whitmore appealed from the denial of her claim on February 18, 2006, and this appeal was received by Standard on February 21, 2006. On April 6, 2006, Standard advised Whitmore that it would

need additional time to respond to her appeal. This was before the end of the initial 45 day period because that period is based upon when Standard received the appeal, not the date that the appeal was sent. Standard then denied her appeal within the allowed extra 30 days. The decision was timely.

None of Whitmore's arguments have demonstrated that Standard's decision was arbitrary and capricious. While I am mindful that Whitmore suffers from a great deal of pain, that does not mean that the decision was arbitrary and capricious. Standard's determination is supported by substantial evidence, and there is more than ample evidence from which a reasonable person could conclude that she is not unable to perform the duties of the occupation of legal secretary. As a result, I will grant defendants' motion for summary judgment and deny plaintiff's summary judgment motion.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment [#21] is granted and plaintiff Patricia Whitmore's motion for summary judgment [#24] is denied.

**IT IS FURTHER ORDERED** that defendants motions to strike [#27 and #35] are granted.

A separate Judgment in accordance with this Memorandum and Order will be entered this same day.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 19th day of December, 2007.